UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JACKSON MAYAGUARI PALTA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. 25-13470-LTS |
| | ) | |
| DAVID WESLING et al., | ) | |
| | ) | |
| Respondents. | ) | |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

December 9, 2025

SOROKIN, J.

Jackson Mayaguari Palta, a citizen of Ecuador who is in immigration detention, seeks a writ of habeas corpus under 28 U.S.C. § 2241.  His petition is ALLOWED as described below.

In July 2021, Palta entered the United States without inspection and was promptly detained by Customs and Border Protection ("CBP") officers.  Doc. No. 1 ¶¶ 1, 11.  Initially, CBP invoked the expedited removal process established in 8 U.S.C. § 1225(b)(1), which applies when immigration offers inspect "aliens arriving in the United States."  Pursuant to that process, on July 6, 2021, CBP completed a form entitled "Notice and Order of Expedited Removal"—documenting its finding that Palta was "inadmissible to the United States" and was subject to removal under § 1225(b)(1).  Doc. No. 8-1 at 1.  But he was not immediately removed.  A week after his arrest by CBP, Palta was transferred into the custody of Immigration and Customs Enforcement ("ICE"), where he remained for ten more days.  Doc. No. 10-3 at 9.  After he claimed a fear of returning to Ecuador, CBP referred Palta to U.S. Citizenship and Immigration Services ("USCIS") for a credible fear interview.  Id.

On July 19, 2021, ICE released Palta, a decision documented in two conflicting reports. One was an Interim Notice Authorizing Parole pursuant to 8 U.S.C. § 1182(d)(5)(A), releasing Palta for one year subject to certain conditions. Doc. No. 8-2 at 1–2. The other was a Notice of Custody Determination pursuant to 8 U.S.C. § 1226, releasing him subject to conditions. Id. at 3; see also Doc. No. 10-3 at 9 (describing Palta's immigration history and noting he was "released from ERO custody on Order of Recognizance" in July 2021). Palta signed—and apparently complied with—both documents. Doc. No. 8-2 at 1, 3; see Doc. No. 8 at 3 (noting Palta "was returned to custody" in September 2025 without citing any reason besides the fact that he still had "not yet had a credible fear interview from USCIS"). He has lived in the United States ever since. See Doc. No. 1 ¶¶ 11–12. It appears no steps were taken to schedule a credible fear interview or otherwise pursue Palta's "expedited" removal for more than four years following his July 2021 release. And, when the year-long parole was set to end in July 2022, it appears the respondents took no action to extend the parole or pursue Palta's detention or removal based on its expiration.

On September 7, 2025, during "a targeted enforcement operation" in Fall River, Massachusetts, ICE encountered Palta, "determined" he "was amenable to removal," and subjected him to "a collateral arrest." Doc. No. 10-3 at 8. His arrest was pursuant to a Form I-200 Warrant for Arrest of Alien which cites 8 U.S.C. § 1226 as the authority for detaining Palta. Doc. No. 10-5 at 2. Palta requested a bond hearing, but an immigration judge ("IJ") found him "statutorily ineligible for IJ custody redetermination" (i.e., for bond under § 1226), relying on a recent decision by the Board of Immigration Appeals adopting reasoning that federal judges across the country have overwhelmingly and repeatedly rejected. Doc. No. 8-3 at 1; see Mem.

Op. at 10 & n.22, App'x A, <u>Barco Mercado v. Francis</u>, No. 25-cv-6582-LAK (S.D.N.Y. Nov. 26, 2025), ECF No. 28.

On September 30, 2025, USCIS finally interviewed Palta and found him credible but concluded he did not have a credible fear of persecution or torture if returned to Ecuador.  Doc. No. 10-2 at 7–11; Doc. No. 8-4 at 1–2.  Palta was notified of this decision on October 8, 2025, he promptly requested review pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(III), and USCIS referred the matter to an IJ.  Doc. No. 8-4 at 1–5.

Nearly a month later, on November 5, 2025, Palta was among a group of detainees who filed a joint habeas petition that was assigned to another session of this Court.  <u>See</u> <u>Alcantara Lugo v. Hyde</u>, No. 25-cv-13296-RGS (D. Mass.), ECF No. 1.  Meanwhile, on November 7, an IJ reviewed USCIS's credible fear finding, "considered testimony," determined that Palta had "established a significant possibility of eligibility for asylum," and vacated the original finding to the contrary.  Doc. No. 8-5.  As a result, a Notice to Appear issued, instituting traditional removal proceedings.  Doc. No. 8-6.  When completing the form Notice to Appear, the immigration officer did not check the box designating Palta an "arriving alien" (though such a box was available), instead selecting the option describing Palta as "an alien present in the United States who has not been admitted or paroled."  <u>Id.</u> at 1.

Thereafter, the joint petition challenging Palta's detention was dismissed without prejudice to each petitioner filing an individual habeas action, <u>Alcantara Lugo</u>, No. 25-cv-13296, ECF No. 9, and Palta instituted this action on November 20, 2025, Doc. No. 1.  The respondents answered the petition by highlighting the expedited removal process invoked in 2021 and the document describing Palta's parole which, they argued, distinguish this case from others in which this Court has recently construed the relevant immigration detention statutes.  <u>See</u> Doc.

No. 8; see also, e.g., Order, Garcia v. Hyde, No. 25-cv-11513-LTS (D. Mass. July 14, 2025),

ECF No. 21 (concluding petitioner arrested inside United States was not subject to mandatory

detention under § 1225 in case where no expedited removal notice had issued).  The opposition

memorandum was supported by a collection of reports describing Palta's immigration history.

Doc. Nos. 8-1 to -6.  Because one document was partially redacted (without explanation) and the

response made clear that not all documents pertaining to Palta's credible fear claim had been

supplied, the Court directed the respondents to file additional records.  Doc. No. 9.  It also

invited a reply brief from Palta addressing the respondents' arguments.  Id.

The respondents timely complied.  Doc. No. 10.  In his reply, Palta argued that the

records before the Court and the language of the relevant statutes and regulations require a

finding that he is detained under § 1226 and, thus, entitled to a bond hearing.  Doc. No. 13 at 4–

10.  Alternatively, he urges that his due process rights are violated by the denial of a bond

hearing even if he is detained under § 1225.  Id. at 10–15.

Having considered the foregoing circumstances and submissions by the parties, the Court

concludes that Palta is entitled to habeas relief.  The respondents' position—that Palta is, and has

always been, subject to mandatory detention under § 1225(b)(1)—is not supported by the record

or the law.  In defining the removal process that CBP initiated in 2021, Congress enacted clear

statutory language under the heading "expedited removal of inadmissible arriving aliens,"

defining "screening" procedures that are designed to be employed at the border and promptly.  8

U.S.C. § 1225(b)(1)(A); cf. Fiallo v. Bell, 430 U.S. 787, 792 (1977) ("This Court has repeatedly

emphasized that over no conceivable subject is the legislative power of Congress more complete

than it is over the admission of aliens." (citation modified)).  If, during screening, a noncitizen

claims a fear of returning to their nation of origin, an asylum interview is conducted "either at a

port of entry" or another designated location.  § 1225(b)(1)(B)(i).  Where the result of that

interview is a rejection of the noncitizen's claim, the noncitizen "shall" be ordered removed

"without further hearing or review" unless they request "prompt review by an immigration

judge" of their credible fear claim.  § 1225(b)(1)(B)(iii)(I), (III).  If review by an IJ is requested,

Congress maintained its focus on efficient procedures with the following unambiguous

requirement: "Review shall be concluded as expeditiously as possible, to the maximum extent

practicable within 24 hours, but in no case later than 7 days after the date of the determination

under [review]."  § 1225(b)(1)(B)(iii)(III) (emphasis added).

Here, the record establishes that the respondents did not comply with the plain language

of the statute that governs the procedure they initiated at the border.  Palta was screened and

found inadmissible.  But then, almost immediately after he claimed a fear of returning to

Ecuador, instead of securing for him a prompt interview with USCIS, the respondents released

him pursuant to documents that on their face invoke two different—and mutually exclusive—

statutory grounds for his release.  Having done so, they took no action whatsoever for more than

four years.  By September of this year, Palta had long resided in this country, and any effort to

remove him can no longer reasonably be described as "expedited."  But the problems for the

respondents do not end there.

Upon encountering him by chance during an effort targeting others, the respondents took

steps that validated the release document citing § 1226.  They issued a warrant that facially

invoked § 1226.  Doc. No. 10-5.  Notably, the respondents neglected to include a copy of this

warrant, or even acknowledge its existence, when they first opposed the petition.  In the wake of

Palta's arrest, the respondents documented the encounter in another official report, describing

Palta's immigration history as having included release "on Order of Recognizance" (an option

available under § 1226)—not humanitarian parole—in 2021.  Doc. No. 10-3 at 9.  Though they

did at last arrange a credible fear interview, weeks after Palta's arrest, they failed to secure

review by an IJ within seven days of the negative determination by the initial interviewer.

Indeed, no such hearing occurred until November 7, 2025—a month after Palta's request, more

than three years after the parole on which respondents now rely expired, and more than four

years after he first asserted a claim of fear.

In these circumstances, the respondents simply cannot in good faith continue to invoke

§ 1225(b)(1) to justify Palta's detention.  That statute governs removal proceedings Congress

intended to be undertaken "expeditiously."  Such proceedings must be conducted as Congress

defined them, including in conformance with the mandatory language quoted above concerning

expedited review by an IJ of a negative credible fear finding.  The respondents failed to adhere to

that language—which could not be clearer and is echoed in an implementing regulation that is

equally clear, see 8 C.F.R. § 1003.42(e)—so they cannot rely on it to justify Palta's detention

long after his screening at the border was conducted, his initial period of parole expired, and the

swift credible fear process Congress designed should have occurred.  Cf. Dep't of Homeland

Sec. v. Thuraissigiam, 591 U.S. 103, 140 (2020) (holding "applicant for admission" detained at

or near the border is guaranteed those rights "that Congress has provided by statute").

On top of all that, when the respondents initiated full removal proceedings after the IJ

found Palta's fear credible, they did so without marking any of the boxes available on the

relevant form that would have reflected a continued intent to rely on the procedures described in

§ 1225.  See Doc. No. 8-6 at 1 (leaving unchecked boxes for "arriving alien," vacated expedited

removal order, and referral after finding of credible fear, and instead marking only option

applicable generally to noncitizens "present in the United States"); cf. DeAndrade v. Moniz, No.

25-cv-12455-FDS, 2025 WL 2841844, at *6 (D. Mass. Oct. 7, 2025) (finding that where immigration authorities invoked § 1226 mechanisms, they may not "turn back the clock" even where notice of expedited removal had previously issued). This course of events eviscerates the respondents' reliance now on § 1225. Palta's detention is pursuant to § 1226 and, thus, he must be provided a bond hearing.

Even if the Court were to disregard the several reports documenting the respondents' reliance on § 1226 and conclude (as the respondents urge) that Palta nevertheless remains subject to § 1225(b)(1), it would still conclude he is entitled to a bond hearing. This is so for reasons recently and ably explored by Judge Murphy, which this Court endorses and incorporates by reference here. See Rincon v. Hyde, No. 25-cv-12633-BEM, 2025 WL 3122784, at *1–10 (D. Mass. Nov. 7, 2025) (finding noncitizen living in United States under grant of humanitarian parole had due process rights that entitled him to bond hearing after parole was revoked).

Accordingly, the Court hereby ALLOWS the petition and ORDERS as follows: 1) the respondents shall release Palta unless he is provided a bond hearing under 8 U.S.C. § 1226(a) **by December 12, 2025**;[1] 2) the respondents shall not retaliate against the petitioner in the context of the bond hearing or otherwise for filing this habeas petition; and 3) the respondents shall file a status report no later than December 16, 2025, describing their compliance with this Order.

SO ORDERED.

       /s/ Leo T. Sorokin

United States District Judge

---

[1] At the hearing, the government will have the burden of either proving by clear and convincing evidence that the petitioner poses a danger to the community, or proving by a preponderance of the evidence that he is a flight risk. Hernandez-Lara v. Lyons, 10 F.4th 19, 42 (1st Cir. 2021).